# EXHIBIT A

 

**December 8, 2022**

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

| | |
|---|---|
| Chester Kenneth Jablonski | Erica Bargas, EH&S |
| CEO & Agent for Service of Process | & Brianna Posey, Compliance Manager |
| Hydroform USA Incorporated | Hydroform USA Incorporated |
| 2848 E. 208th Street | 2848 E. 208th Street |
| Carson, CA 90810 | Carson, CA 90810 |

RE:   **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq.*)**

Dear Mr. Jablonski, Ms. Bargas and Ms. Posey:

This firm represents Los Angeles Waterkeeper ("LA Waterkeeper") in regard to violations of the Clean Water Act ("CWA" or "the Act") and California's General Industrial Storm Water Permit ("General Permit" or "Permit") occurring at Hydroform USA Incorporated located at 2848 E. 208th Street, Carson, California 90810, with Waste Discharger Identification Number 4 19I028813 (the "Facility"). The Facility primarily engages in developing, manufacturing and distribution of products for the aerospace industry. This letter is being sent to you as the responsible owners, officers, and/or operators of the Facility. Unless otherwise noted, Hydroform USA Incorporated shall hereinafter be referred to as "Hydroform" and CEO Chester Kenneth Jablonski, Environmental Health and Safety Manager Erica Bargas, and Compliance Manager Brianna Posey as the Owners/Operators of the Facility.

LA Waterkeeper is a nonprofit 501(c)(3) public benefit corporation organized under the laws of California with its main office located in downtown Los Angeles, California. LA Waterkeeper was founded in 1993, and its members live, work, and recreate in and around the Los Angeles area. LA Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal waters of Los Angeles County including the Dominguez Channel, the Dominguez Channel Estuary, Los Angeles Harbor, and the Pacific Ocean. To further this mission, LA Waterkeeper actively seeks federal and state implementation of the Clean Water Act. Where necessary, LA Waterkeeper directly initiates enforcement actions on behalf of itself and its members.

Members of LA Waterkeeper work and reside in Los Angeles County, and they use and enjoy Dominguez Channel and the bordering parks, pathways, golf courses



and athletic fields, and downstream the Dominguez Channel Estuary, Los Angeles Harbor, and the Pacific Ocean (the "Receiving Waters")[1]. For purposes of this Notice of Violations and Intent to File Suit letter, LA Waterkeeper acknowledges the potential of an alternate Receiving Waters Compton Creek and the Los Angeles River and downstream, Queensway Bay and Junipero Beach.[2]

As explained in detail below, Hydroform discharges pollutants into the Receiving Waters, in violation of the Clean Water Act and the Storm Water Permit. LA Waterkeeper members also use and enjoy the Receiving Waters and other connected waterways to bike, boat, kayak, bird watch, ride horses, view wildlife, hike, walk, run, fish, surf, swim, sail, and recreate. Additionally, LA Waterkeeper members use the Receiving Waters to engage in scientific study through pollution and habitat monitoring and restoration activities. The unlawful discharge of pollutants from the Facility into the Receiving Waters impairs LA Waterkeeper's members' use and enjoyment of these waters. The unlawful discharge of pollutants from the Facility requires LA Waterkeeper to expend its limited resources to study and combat pollution from the Facility. Thus, the interests of LA Waterkeeper and its members have been, are being, and will continue to be adversely affected by Hydroform's failure to comply with the Clean Water Act and the General Permit.

Hydroform is in ongoing violation of the substantive and procedural requirements of the CWA, 33 U.S.C. § 1251 et seq.; and California's General Industrial Storm Water Permit, National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 Water Quality Order No. 2014-0057-DWQ as amended by Order No. 2015-0122-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load ("TMDL") Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, and as subsequently amended by Order 2018-0028-DWQ incorporating TMDL effluent limits (effective July 1, 2020), and is collectively referred to herein as the General Permit or Permit.[3]

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4), each separate violation of the CWA commencing five years prior to the date of this Notice of Violation and Intent to File Suit subjects Hydroform to a penalty of up $59,937 per day per violation. In addition to civil penalties, LA Waterkeeper will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) of the Act (33 U.S.C. §§ 1365(a), (d)) and

---

[1] The Storm Water Pollution Prevention Plan for the Facility lists Total Maximum Daily Loads for the Dominguez Channel as applicable to storm water discharges from the Facility.

[2] Members of LA Waterkeeper also work and reside near to and use and enjoy the Compton Creek, the Los Angeles River, Queensway Bay and Junipero Beach in the same manner as the Dominguez Channel and its downstream water bodies.

[3] Hydroform submitted its Notice of Intent to comply with the General Permit for the Facility on or about August 18, 2020, which identifies the Receiving Water Compton Creek and "Unidentified Water."

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 3 of 19



such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The CWA requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. 135.2.

As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, LA Waterkeeper intends to file suit under Section 505(a) of the Act (33 U.S.C. § 1365(a)) in federal court against Hydroform for violations of the Act and the General Permit.

## I.    Background

### A.    The Clean Water Act

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a NPDES permit, is illegal. *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers, as well as through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Water Resource Control Board ("State Board") to issue individual and general NPDES permits in California. 33 U.S.C. § 1342. The State Board coordinates with the Los Angeles Regional Water



Quality Control Board ("Regional Board"), which has shared jurisdiction over the Facility for state and federal water pollution control efforts.

**B.    California's General Permit for Storm Water Discharges Associated with Industrial Activities**

Pursuant to authority under the CWA, the State Board issued the General Permit to regulate storm water discharges associated with industrial activities throughout California. Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing an NOI. General Permit Sections XXI.A and I.A.12. Facilities must file their NOIs before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA. General Permit Section XXI.A. The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements. Beginning under the General Permit Facilities must submit Exceedance Response Action Plans ("ERA Report") to the State Board outlining effective plans to reduce pollutants if a Facility reports a pollutant above the Numeric Action Level ("NAL"). An annual NAL exceedance occurs when the average of all the analytical results for a parameter from samples taken within a reporting year[4] exceeds the annual NAL value for that parameter. An instantaneous maximum NAL exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value or are outside of the instantaneous maximum NAL range for pH. General Permit Section XII.A.

On July 1, 2020, updated pollutant-discharge standards including Total TMDL Implementation Requirements became enforceable. General Permit Attachment E. Any exceedances of a Numeric Effluent Limitation ("NEL") or a TMDL Numeric Action Level ("TNAL") following July 2020 is a per se violation of the General Permit and Clean Water Act. For this Facility, applicable Interim TNALs for the Receiving Waters include copper (0.20751 mg/L), lead (0.12288 mg/L), and zinc (0.89887 mg/L). Final copper, lead, and zinc NELs for the Dominguez Channel are 0.0097 mg/L, 0.0427 mg/L, and 0.697 mg/L respectively and become enforceable on May 5, 2032. Final NELs[5] for the Dominguez Channel Estuary which also become enforceable on May 5, 2032 are lower for copper and zinc and slightly higher for lead.

---

[4] A reporting year under the General Permit is July 1 to June 30.
[5] Currently enforceable NELs for the Los Angeles River are copper (0.06749 mg/L), lead (0.094 mg/L) and zinc (0.159 mg/L).

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 5 of 19



### C.    Hydroform Industrial Facility

The Hydroform Facility is located at 2848 E. 208th Street, Carson, California, 90810. The Facility's primary industrial purpose is the manufacture and distribution of a variety of aerospace products mostly fashioned from sheet metal with machines for tooling, pressing, punching, rolling, forming, heat treating and other industrial processes. Other industrial activities at the Facility include painting, metal coating and spraying, mechanical repairs, machine and vehicle lubrication, hazardous materials and hazardous waste storage, assembly, metal buffing and polishing, and industrial material storage. The Facility's NOI notes the site is approximately 105,000 square feet and 25,000 square feet of industrial areas exposed to stormwater. The NOI also indicates 95% of the site is impervious. The Facility's SWPPP last updated in September 2021 ("Facility SWPPP") states that the Facility is 280,000 square feet with a building of 105,000 square feet on site, with operating hours of Monday through Friday from 5 AM to 2:30 PM and Saturdays from 5 AM to 10 AM. Pursuant to the Facility SWPPP, Hydroform operates under Standard Industrial Classification ("SIC") Codes:

- 3728 – Aircraft parts and auxiliary equipment, NEC
- 3355 – Aluminum rolling and drawing
- 3471 – Electroplating, plating, polishing, anodizing, and coloring
- 3398 – Metal heat treating

Under SIC Code(s) 3728, 3355, 3471 and 3398, Hydroform is required to sample storm water for copper ("Cu"), zinc, ("Zn"), iron ("Fe"), aluminum ("Al"), nitrate + nitrite nitrogen ("N+N"), total suspended solids ("TSS"), oil and grease ("O&G"), and pH.

Facilities must also sample and analyze for additional parameters identified on a facility specific basis to reflect pollutant a source assessment, due to receiving water impairments, or as required by the Regional Board. General Permit Section XI.B.6. Pursuant to 2018 Clean Water Act Section 303(d) list of impaired waterbodies[6], the Dominguez Channel is impaired for copper, indicator bacteria, lead, toxicity, and zinc. The Dominguez Channel Estuary is impaired for copper, lead, dieldrin, zinc, chlordane, benthic community effects, benzo(a)pyrene, benzo(a)anthracene, chrysene, indicator bacteria, lead, PCBs, DDT, phenanthrene, pyrene, and toxicity. The Los Angeles Harbor is listed for copper, lead, chromium, toxaphene, dieldrin, zinc, mercury, cadmium, chlordane, benzo(a)pyrene, benzo(a)anthracene, 2-methylnaphthalene, chrysene, indicator bacteria, lead, PCBs, PAHs, DDT, phenanthrene, pyrene, benthic community effects, and toxicity. Here, the Owners/Operators of Hydroform sample for each for of the required parameters under the respective SIC codes.

The Dominguez Channel is a waterway of historical and natural significance with a watershed comprised of approximately 110 square miles in the southern portion of

---

[6] Reach 1 of the Los Angeles River is impaired for lead, copper, DDT, zinc, cadmium, pH, trash, and cyanide. The Los Angeles River Estuary, the Los Angeles Inner Harbor and Queensway Bay are also listed for impairments on the Section 303(d) list including for zinc, copper, and lead.

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 6 of 19



Los Angeles County which drains to San Pedro Bay an area that once consisted of marshes and mudflats now hosts the Los Angeles/Long Beach Harbor. Once uncompromised, today 96% of the watershed's total area is developed primarily for residential and industrial use. The Dominguez Channel watershed contains a network of storm drains and smaller flood control channels and extends from the Los Angeles International Airport to the Harbor and drains large portions of Inglewood, Hawthorne, El Segundo, Gardena, Lawndale, Redondo Beach, Torrance, Carson and Los Angeles. LA Waterkeeper is dedicated to the restoration of the watershed by limiting pollution in the waterways to encourage the heath of the local ecosystem.

Hydroform designs, develops, manufactures and distributed airframe detail parts, subassemblies, advanced tech assembly, machining equipment, fuselage assembly, kits, and detail parts. As listed in part above, industrial activities at the Hydroform Facility include metal stretching, brake and roll forming, metal routing, chem painting, hydroforming, CNC machining, coating aluminum with chromium, spraying chromium to aluminum parts, aluminum cutting, heat treatment, parts assembly, and buffing aluminum to produce the above product types.

The Facility consists of a material warehouse and an adjacent materials storage area, a tool storage building, the main assembly building with a production floor, a Parpas machine tooling area, hazardous waste and chemical storage areas, the tool crib, spray paint booths, a heat-treating area, the process line area, a water treatment system, an inspection area, the shipping and receiving area adjacent the loading area, an office, and parking areas. The following areas are identified in the Facility SWPPP as areas of industrial activities: deburr area, assembly area, heat treatment area, hazardous waste storage area, aluminum forming-stretch area, hydroform area, spray paint booth, anodizing and chem-film lines, and the loading area. Industrial and commuter vehicle traffic and parking also occurs at the Facility. Aluminum and metal shavings, chips, dust and particulates, and chemical sediment from these activities can accumulate around the Facility. Dirt and residue from roofs at the Facility also contribute to pollutants in storm water. The industrial activities detailed above expose pollutants to storm water via direct contact, building exhaust and ventilation, track out, dust and debris, traffic, and spills and leaks.

Pollutants of concern from these industrial areas and activities at the Facility include N+N, oil & grease, pH, iron, TSS, zinc, aluminum, and copper. These pollutants are subject to tracking to other areas of the Facility, and offsite of the Facility, by employees, transfer of industrial materials between work areas and the loading docks, vehicles, forklifts, and other equipment. These areas of industrial activity generate and release pollutants at the Facility which are discharged in storm water, including iron, zinc, copper, aluminum, N+N, TSS, pH, oil & grease.

The Facility SWPPP describes five (5) drainage areas ("DA") with only the first two (2) listed here claimed to be exposed to industrial activities:  DA-A) main facility west; DA-B) main facility east; DA-C) main facility center; DA-D) assembly building east;



and DA-E) assembly building west. Storm water flows north through parking lots in drainage areas A and B where it is sampled at the driveways. It is unknown to LA Waterkeeper whether storm water sampled from DA-A and DA-B is representative of all industrial storm water discharged from the Facility as required by the Permit. Based upon publicly available materials industrial activities appear to occur throughout the Facility. The Facility SWPPP is silent as to how samples are collected from DA-A and DA-B but does identify the sampling locations. Given that no onsite storm drains identified in the SWPPP maps, samples may be taken from storm water sheet flow in the driveways prior to discharge onto E. 208th Street where storm water enters the City of Carson Municipal Separate Storm Sewer System ("MS4"). However, the October 1, 2021 ERA Report states that the SWPPP map requires updating with sampling locations and storm drains. The SWPPP predates the ERA report.

An inspection report submitted by the Regional Board to the State Board's Stormwater Multiple Application and Report Tracking System ("SMARTS") describing an August 27, 2021 site inspection at the Facility details non-compliance with Permit TNALs and includes and includes notations regarding SWPPP deficiencies and observations of oil leaks without control measures. The report also identifies the Receiving Water as the Dominguez Channel. LA Waterkeeper, however, notes that the NOI identifies Compton Creek as a Receiving Water and the MS4 drain inlet identified in the SWPPP that accepts storm water discharge from the Facility is approximately 1000 feet from Compton Creek just short of the confluence with the Los Angeles River, and thus LA Waterkeeper notices the Owners/Operators of the potential for alternate or additional Receiving Waters.

Any person or facility discharging storm water associated with industrial activity must comply with the General Permit. See 33 U.S.C. §§ 1311(a), 1342; 40 C.F.R. § 122.26(c)(1); General Permit Fact Sheet at VII.

On July 1, 2020, the amendment to the General Permit by Order No. 2015-0122 –DWQ became enforceable and updated pollutant-discharge standards including Total TMDL Implementation Requirements and Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use. General Permit Attachment E. Any exceedances of a Numeric Effluent Limitations ("NEL") or a TMDL Numeric Action Level ("TNAL") following July 1, 2020 is a per se violation of the General Permit and Clean Water Act. As noted above, applicable TNALs for the Facility include copper (0.20751 mg/L), lead (0.12288 mg/L), and zinc (0.89887 mg/L). Final copper, lead, and zinc NELs[7] for the Dominguez Channel are 0.0097 mg/L, 0.0427 mg/L, and 0.697 mg/L respectively and become enforceable on May 5, 2032. Following the implementation of the TNALs for the Dominguez Channel and, Hydroform violated the zinc standard and

---

[7] Constituents with current NELs for the Los Angeles River are copper (0.06749 mg/L), zinc (0.159 mg/L), lead (0.094 mg/L), and cadmium (0.0031 mg/L) which will be applicable to the Facility if the Los Angeles River is a receiving water for Facility storm water discharges.



the future NEL once. All storm water samples taken for copper since the Facility entered the Permit program have exceeded the future NEL standard.

Based on its review of available public documents, primarily from SMARTS, LA Waterkeeper is informed and believes that Hydroform is in ongoing violation of both the substantive and procedural requirements of the CWA, and the General Permit at the Facility. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the CWA, Hydroform is subject to penalties for violations of the Act since at least December 8, 2020.[8] LA Waterkeeper expects to identify additional storm water discharges conveying pollutants to the Receiving Waters in violation of the CWA and the General Permit through further investigation of the Facility and as this matter progresses through the rainy season.

### A.   Hydroform Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations, and Effluent Limitations

Hydroform's storm water sampling results provide conclusive evidence of its failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations. Self-monitoring reports under the General Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

### 1.   Applicable Water Quality Standards

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. General Permit Section III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Board's Basin Plan or statewide water quality control plans and policies. General Permit Section III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. General Permit Sections VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. General Permit Section XX.B. The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id*.

---

[8] August 18, 2020 is the date of the Hydroform Notice of Intent to Comply with the General Permit.



The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, the violation of which is a violation of Permit conditions. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015). The CTR establishes numeric receiving water limits for toxic pollutants in California surface waters. 40 C.F.R. § 131.38. The CTR establishes a numeric limit for at least one of the pollutants thought to be discharged by Hydroform: zinc—0.12 mg/L and copper—0.013 mg/L (maximum concentration).

The Water Quality Control Plan for the Los Angeles Region ("Basin Plan") also sets forth water quality standards and prohibitions applicable to Hydroform's storm water discharges. The Basin Plan includes a narrative toxicity standard which states that "(a)ll waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life." The Basin Plan's Water Quality Standards require a narrower pH range of 6.5 – 8.5 pH units for inland surface waters such as the Dominguez Channel and its watershed. *See* Basin Plan.

### 2. Applicable Effluent Limitations

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit Section V.A. Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals,* 619 F.Supp.2d 914, 920, 923 (C.D. Cal. 2009); General Permit Section XII.A.

The following EPA benchmarks have been recently updated for pollutants discharged by Hydroform: total suspended solids—100 mg/L; copper—0.00519 mg/L; lead—0.082 mg/L; aluminum—1.1 mg/L; zinc—0.12 mg/L, oil & grease—15 mg/L; and pH—6-9 s.u. The General Permit uses NAL values based upon previous EPA Benchmarks, and are as follows: total suspended solids—100 mg/L; copper—0.0123 mg/L; lead—0.262 mg/L; aluminum—0.75 mg/L; zinc—0.117 mg/L, oil & grease—15 mg/L; iron—1 mg/L; and pH—6-9 s.u. General Permit Section XI. The Basin Plan's Water Quality Standards require a narrower pH range of 6.5—8.5 pH units.

The General Permit also requires a permittee whose discharges violate the General Permit's Receiving Water Limitations or water quality standards, such as,



NALs, TMDLs, TNALs, and NELs to implement additional BMPs or other control measures that are tailored to that facility in order to attain compliance with the receiving water limitation. A Discharger that is notified by a Regional Board or who determines the discharge is causing or contributing to an exceedance of a water quality standard must comply with the Water Quality Based Corrective Actions in Section XX.B of the General Permit and report to the Regional Board regarding same. See General Permit Section XX.B.

### 3.      Hydroform's Storm Water Sample Results

As detailed above, Hydroform's SWPPP describes five drainage areas, but the Owners/Operators only sample storm water from DA-A and DA-B. Surface drainage at the Facility flows off the Facility Site and into the City of Carson's MS4 system, and, upon information and belief, ultimately empties to the Dominguez Channel.

Except as provided in Section XI.C.4 of the General Permit, samples shall be collected from each drainage area at all discharge locations. The samples must be: a) Representative of storm water associated with industrial activities and any commingled authorized non-storm water discharges; or, b) Associated with the discharge of contained storm water. At this time, Waterkeeper is unable to determine if storm water from the two sampling points at the Facility is representative of industrial storm water at the Facility.

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations, and effluent limitations of the Permit.

### a.   Discharges of Storm Water Containing Copper (Cu) at Concentrations in Excess of Applicable EPA Benchmark Value and/or Numeric Effluent Limits

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) | NAL Value (mg/L) | TNAL (mg/L) |
|---|---|---|---|---|---|---|
| 3/3/2021 | NE Driveway | Cu | 0.062 | 0.00519 | 0.0332 | 0.20751 |
| 3/15/2021 | NW Driveway | Cu | 0.019 | 0.00519 | 0.0332 | 0.20751 |
| 3/15/2021 | NE Driveway | Cu | 0.029 | 0.00519 | 0.0332 | 0.20751 |
| 3/28/2022 | NW Driveway | Cu | 0.0347 | 0.00519 | 0.0332 | 0.20751 |
| 3/28/2022 | NE Driveway | Cu | 0.0484 | 0.00519 | 0.0332 | 0.20751 |
| 3/3/2021 | NW Driveway | Cu | 0.033 | 0.00519 | 0.0332 | 0.20751 |
| 12/14/2021 | NW Driveway | Cu | 0.023 | 0.00519 | 0.0332 | 0.20751 |
| 12/14/2021 | NE Driveway | Cu | 0.019 | 0.00519 | 0.0332 | 0.20751 |
| 11/8/2022 | NE Driveway | Cu | 0.0196 | 0.00519 | 0.0332 | 0.20751 |
| 11/8/2022 | NW Driveway | Cu | 0.0255 | 0.00519 | 0.0332 | 0.20751 |

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 11 of 19



**b. Discharges of Storm Water Containing Iron (Fe) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL Value (mg/L) |
|---|---|---|---|---|
| 3/3/2021 | NE Driveway | Fe | 4.0 | 1.0 |
| 3/3/2021 | NW Driveway | Fe | 1.1 | 1.0 |
| 3/15/2021 | NW Driveway | Fe | 1.6 | 1.0 |
| 3/28/2022 | NW Driveway | Fe | 1.68 | 1.0 |
| 3/28/2022 | NE Driveway | Fe | 1.58 | 1.0 |

**c. Discharges of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL Value (mg/L) |
|---|---|---|---|---|
| 3/3/2021 | NE Driveway | TSS | 120 | 100 |

**d. Discharges of Storm Water Containing Zinc (Zn) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) | NAL Value (mg/L) | TNAL (mg/L) |
|---|---|---|---|---|---|---|
| 3/3/2021 | NE Driveway | Zn | 1.1 | 0.12 | 0.26 | 0.89887 |
| 3/3/2021 | NW Driveway | Zn | 0.26 | 0.12 | 0.26 | 0.89887 |
| 3/15/2021 | NE Driveway | Zn | 0.19 | 0.12 | 0.26 | 0.89887 |
| 3/15/2021 | NW Driveway | Zn | 0.16 | 0.12 | 0.26 | 0.89887 |
| 12/14/2021 | NE Driveway | Zn | 0.47 | 0.12 | 0.26 | 0.89887 |
| 12/14/2021 | NW Driveway | Zn | 0.46 | 0.12 | 0.26 | 0.89887 |
| 3/28/2022 | NW Driveway | Zn | 0.555 | 0.12 | 0.26 | 0.89887 |
| 3/28/2022 | NE Driveway | Zn | 0.668 | 0.12 | 0.26 | 0.89887 |
| 11/8/2022 | NE Driveway | Zn | 0.503 | 0.12 | 0.26 | 0.89887 |
| 11/8/2022 | NW Driveway | Zn | 0.464 | 0.12 | 0.26 | 0.89887 |

**e. Discharges of Storm Water Containing Aluminum (Al) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL Value (mg/L) |
|---|---|---|---|---|
| 3/3/2021 | NE Driveway | Al | 3.4 | 0.75 |

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 12 of 19



| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL Value (mg/L) |
|---|---|---|---|---|
| 3/3/2021 | NW Driveway | Al | 1.3 | 0.75 |
| 3/15/2021 | NW Driveway | Al | 0.93 | 0.75 |
| 3/28/2022 | NE Driveway | Al | 1.12 | 0.75 |
| 3/28/2022 | NW Driveway | Al | 0.785 | 0.75 |

**f. Discharges of Storm Water Containing Nitrate + Nitrite Nitrogen (N+N) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL Value (mg/L) |
|---|---|---|---|---|
| 3/28/2022 | NW Driveway | N+N | 0.794 | 0.68 |
| 12/14/2021 | NW Driveway | N+N | 3.7 | 0.68 |
| 3/3/2021 | NE Driveway | N+N | 1.9 | 0.68 |
| 3/28/2022 | NE Driveway | N+N | 0.963 | 0.68 |
| 12/14/2021 | NE Driveway | N+N | 1.6 | 0.68 |
| 3/15/2021 | NE Driveway | N+N | 0.92 | 0.68 |
| 11/8/2022 | NE Driveway | N+N | 1.89 | 0.68 |
| 11/8/2022 | NW Driveway | N+N | 1.69 | 0.68 |

Hydroform's sample results demonstrate violations of the General Permit's discharge prohibitions, receiving water limitations, and effluent limitations set forth above. Waterkeeper is informed and believes that the Hydroform has known that its storm water contains pollutants at levels exceeding water quality standards since at least December 8, 2020. Since entering the General Permit program, Hydroform recorded NAL average exceedances for zinc, copper, iron, N+N and aluminum. During the 2020-2021 reporting year with two sampling events in March, the Hydroform Facility entered ERA Level 1 for zinc, copper, iron, aluminum, and N+N, averaging 0.423 mg/L for zinc, 0.036 mg/L for copper, 1.89 mg/L for iron, 1.565 mg/L for aluminum, and 0.995 mg/L for N+N. With only two (2) Qualifying Storm Events[9] ("QSE") sampled during the 2021-2022 reporting year, Hydroform entered ERA level 2 for zinc, averaging 0.53825 mg/L, iron averaging 1.235 mg/L, aluminum averaging 0.79125 mg/L, and N+N averaging 1.76425 mg/L.

LA Waterkeeper further alleges that additional NAL exceedances would have been reported had the Owners/Operators of Hydroform sampled the requisite number of times per reporting year.

LA Waterkeeper alleges that such violations occur each time storm water or non-storm water discharges from the Facility. Attachment A hereto, sets forth the specific

---

[9] Defined below.



rain dates on which Waterkeeper alleges that Hydroform has discharged storm water containing impermissible levels of aluminum, iron, TSS, copper, N+N, and zinc in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.

During the Facility history under the Permit, Hydroform has failed to collect the required amount of storm water samples as set forth in Section XI.B(2) of the General Permit.[10] The Hydroform Facility has failed to collect the requisite four storm water samples in each of the previous five reporting years. However, the Hydroform Facility SWPPP notes that the Facility is a member of a permit directed Compliance Group. Compliance Group Participants are required to collect and analyze at least two Qualifying Storm Events ("QSE") within the reporting year—once between July 1 and December 31 and once between January 1 and June 30. However, in the 2020-2021 reporting year Hydroform was newly permitted.

### 4.    Hydroform Has Failed to Implement BAT and BCT

Dischargers must implement adequate BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. General Permit Section V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit Sections X.H.1-2. Sampling results of orders of magnitude in excess of benchmark levels, as reported by Hydroform, are evidence that Hydroform does not have BMPs that achieve BAT/BCT (*Santa Monica Baykeeper v. Kramer Metals, Inc.* 619 F. Supp. 2d 914, 925 (C.D. Cal. 2009.)

Hydroform has failed to implement the minimum BMPs required by the General Permit at the Facility, including good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. General Permit Sections X.H.1(a–g). The BMPs that are described in the Facility's SWPPP are insufficient to prevent the NAL exceedances for constituents listed above. As evidenced by these sample results, the current BMPs at the Facility are inefficient, and the Facility's Monitoring Implementation Plan needs improvement.

Hydroform has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge

---

[10] Dischargers must collect and analyze a total of four qualifying storm events ("QSEs") each year they are enrolled under the General Permit. Two samples must be collected and analyzed during the first half of the reporting year (July 1 to December 31) and two must be collected and analyzed during the second half of the reporting year (January 1 to June 30). General Permit, Section XI.B(2).

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 14 of 19



reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. General Permit Section X.H.2. According to the Hydroform Facility SWPPP, the Facility's advanced BMPs listed in the current SWPPP do not qualify as advanced BMPs but are rather minimum and housekeeping BMPs: 1) weekly outdoor vacuuming; 2) rugs outside doorways to brush off chips from employee's shoes; 3) reorganize outdoor iron storage to reduce footprint; 4) periodic deep cleaning of heat treat area; and 5) gap between aluminum chip bin and wall has been covered. There are no structural BMPs, containment and discharge reduction, or treatment control BMPs as may be required to meet the NALs and will likely be required to meet the coming NELs. As discussed above, these BMPs are insufficient to achieve compliance with the General Permit.

Each day the Owners/Operators have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the CWA (33 U.S.C. § 1311(a)). The violations described above were at all times in violation of Section X of the General Permit. Accordingly, the Owners/Operators have been in violation of the BAT and BCT requirements at the Facility every day since at least December 8, 2020.

### 5. Hydroform Has Failed to Develop and Implement an Adequate Storm Water Pollution Plan

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise a facility's SWPPP whenever necessary and certify and submit SMARTS their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS any non-significant revisions not more than once every three (3) months in the reporting year. General Permit Section X.B. The Hydroform Facility SWPPP was last updated in September 2021 with an updated map, a visual observation form and a list of advanced BMPs as detailed above that do not meet the General Permit definition for Advanced BMPs. Without implementation of BMPs meeting the Permit standard, LA Waterkeeper alleges that NAL and TNAL exceedances are likely in the future.

LA Waterkeeper's investigation indicates that Hydroform has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements since at least December 8, 2020. Hydroform has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the



Facility's unlawful effluent limitation violations. As discussed above, the Facility's 2020 SWPPP lists limited advanced BMPs, and as evidenced by the most recent storm water sampling from the Facility from March 8, 2022, the minimum BMPs deployed at the Facility are insufficient to meet the NELs or the NALs.

Last, the General Permit requires a permittee whose discharges violate the General Permit's Receiving Water Limitations to implement additional BMPs or other control measures, in order to attain compliance with the receiving water limitation identifying what additional BMPs will be implemented to achieve water quality standards, along with an implementation schedule. General Permit Section I.E. These new BMPs must then be incorporated into the Facility's SWPPP. Information available to LA Waterkeeper indicates that the Facility Owners/Operators failed to implement sufficient additional BMPs as required by the General Permit following past violations of the NALs and NELs. As such, the Owners and/or Operators are in daily violation of this improved BMP requirement of the General Permit.

Each day the Owners/Operators failed to develop and implement an adequate SWPPP is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. The Owners/Operators have been in violation of these requirements at the Facility every day since at least December 8, 2020.

### 6. Hydroform has Failed to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program

Section X.I of the General Permit requires Facility Owners/Operators to develop and implement a Monitoring Implementation Plan ("MIP"). The primary objective of the monitoring and reporting requirements is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* General Permit Fact Sheet, Section II.J(1). Monitoring undertaken must therefore determine whether pollutants are being discharged, and whether response actions are necessary, and must evaluate the effectiveness of BMPs. *See* General Permit, Section I.K(70).

Section XI.A of the General Permit requires dischargers to visually observe and collect samples of storm water from all locations where storm water is discharged. Under XI.B of the General Permit, the Facility Owners/Operators are required to collect at least two (2) samples from each discharge location at their Facility during the first half of the reporting year, and then again during the second half of the reporting year. Storm water samples must be analyzed for total suspended solids, pH, oil & gas, and other pollutants that are likely to be present in the Facility's discharges in significant quantities, and as required under the General Permit pursuant to a Facility SIC Code. *See* General Permit Section XI.B(6). As detailed above, the Facility has a history of insufficient sampling and reporting, in violation of the General Permit.



The Facility Owners'/Operators' failure to conduct sampling and monitoring as required by the General Permit demonstrates that it has failed to develop, implement, and/or revise an MIP that complies with the requirements of Section XI of the General Permit. Every day that the Facility Owners/Operators conduct operations in violation of the specific monitoring requirements of the General Permit, or with an inadequately developed and/or implemented MIP, is a separate and distinct violation of the General Permit, and the Clean Water Act. The Facility Owners/Operators have been in daily and continuous violation of the General Permit's MIP requirements every day since at least December 8, 2020. These violations are ongoing, and Waterkeeper will include additional violations when information becomes available, including specifically continuing violations of the General Permit monitoring requirements (*see* General Permit, Section XI). The Facility Owners/Operators are subject to civil penalties for all violations of the Clean Water Act occurring since December 8, 2020.

### 7.   Failure to Comply with the General Permit's Reporting Requirements

Section XVI of the General Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. Section XVI of the Permit requires that the Annual Report include a compliance checklist that indicates that a discharger complies with and has addressed all applicable requirements of the Permit, an affirmation of visual observations and sampling results, an identification and explanation of any non-compliance, an identification of all revisions made to the SWPPP, within the reporting year, and the date of the Annual Evaluation. General Permit Section XVI. Laboratory reports of sample analysis, the annual comprehensive site compliance evaluation report, an explanation of why a permittee did not implement any activities required are also reporting requirements throughout the reporting year and are typically uploaded into the SMARTS portal.

The Permit also requires a permittee whose discharges violate the General Permit's Receiving Water Limitations or water quality standards, such as, NALs, TMDLs, TMDL-Specific Numeric Action Levels, and Numeric Effluent Limits, to implement additional BMPs or other control measures that are tailored to that facility in order to attain compliance with the receiving water limitation. *See* General Permit Section I.C.36. A Discharger that is notified by a Regional Board or who determines the discharge is causing or contributing to an exceedance of a water quality standard must comply with the Water Quality Based Corrective Actions in Section XX.B of the Permit and report to the Regional Board regarding same. *See* General Permit Section XX.B. A discharger who violates an NEL must also comply with the Water Quality Based Corrective Actions of the Permit. See General Permit Sections V(C), VII(A)(1), VII(E) and Attachment E. These requirements have not been met at Hydroform.

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 17 of 19



Information available to LA Waterkeeper indicates that the Facility Owners/Operators have failed to accurately report their non-compliance with the General Permit and collect storm water and then report storm water sampling analysis in compliance with the Permit, and thus the Facility's Annual Reports are inaccurate. In addition, the Owners/Operators have failed to prepare, implement, and report on its Water Quality Based Corrective Actions as required by the Permit. As such, the Owners/Operators are in daily violation of the General Permit. Every day the Hydroform Facility Owners/Operators conduct operations at the Facility without reporting as required by the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). The Facility Owners/Operators have been in daily and continuous violation of the General Permit's reporting requirements every day since at least December 8, 2020. These violations are ongoing, and LA Waterkeeper will include additional violations when information becomes available, including specifically violations of the General Permit reporting requirements (*see* General Permit, Section XVI). The Facility Owners/Operators are subject to civil penalties for all violations of the Clean Water Act occurring since December 8, 2020.

## III.     Persons Responsible for the Violations

LA Waterkeeper puts Hydroform on notice that it is the entity responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, LA Waterkeeper puts Hydroform on formal notice that it intends to include those persons in this action.

## IV.     Name and Address of Noticing Party

The name, mailing address, and telephone number of the noticing party is as follows:

Barak J. Kamelgard
Benjamin A. Harris
Los Angeles Waterkeeper
360 E 2nd Street Suite 250
Los Angeles, CA  90012
(310) 394-6162
Barak@lawaterkeeper.org
Ben@lawaterkeeper.org

## V.     Counsel

Waterkeeper has retained legal counsel to represent it in this matter. Please direct all communications to:

Anthony M. Barnes
Aqua Terra Aeris Law Group

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 18 of 19



4030 Martin Luther King Jr. Way
Oakland, CA 94609
(917) 371-8293
amb@atalawgroup.com

## VI.    Conclusion

Waterkeeper believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Hydroform and its agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next twenty (20) days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Anthony M. Barnes
Aqua Terra Aeris Law Group

CWA Notice of Intent to Sue
Hydroform USA Incorporated
December 8, 2022
Page 19 of 19



## <u>SERVICE LIST</u>

*VIA US MAIL*

Merrick Garland
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Martha Guzman
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

Michael S. Regan
Administrator
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460 (1101A)

Deborah Smith
Executive Officer
Los Angeles Regional Water Quality
Control Board
320 W 4th Street, #200
Los Angeles, California 90013

Eileen Sobeck
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Attachment A                                                    Days with over 0.1 inch of rain

| STATION | NAME | DATE | PRCP |
|---------|------|------|------|
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/8/2018 | 0.24 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/9/2018 | 1.24 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/26/2018 | 0.21 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/2/2018 | 0.3 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/10/2018 | 0.36 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/15/2018 | 0.11 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/16/2018 | 0.17 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/22/2018 | 0.35 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 10/12/2018 | 0.34 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 10/13/2018 | 0.21 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 11/22/2018 | 0.41 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 11/29/2018 | 0.84 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/6/2018 | 1.64 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/5/2019 | 0.78 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/7/2019 | 0.12 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/12/2019 | 0.69 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/14/2019 | 1.05 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/15/2019 | 0.93 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/16/2019 | 0.98 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/17/2019 | 0.59 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/31/2019 | 1.24 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/2/2019 | 1.39 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/3/2019 | 0.27 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/4/2019 | 0.37 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/5/2019 | 0.11 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/9/2019 | 0.15 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/13/2019 | 0.19 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/14/2019 | 2.25 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/15/2019 | 0.16 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/2/2019 | 0.85 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/6/2019 | 0.86 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 5/16/2019 | 0.25 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 5/19/2019 | 0.18 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 11/20/2019 | 0.38 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 11/27/2019 | 0.18 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 11/28/2019 | 2.18 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/4/2019 | 0.82 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/22/2019 | 0.24 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/23/2019 | 1.28 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/25/2019 | 1.03 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/26/2019 | 1.14 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/17/2020 | 0.15 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 2/9/2020 | 0.3 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/12/2020 | 1.23 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/13/2020 | 0.5 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/16/2020 | 0.27 |

Attachment A                                                                    Days with over 0.1 inch of rain

| STATION | NAME | DATE | PRCP |
|---------|------|------|------|
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/22/2020 | 0.71 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 4/5/2020 | 0.14 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 4/6/2020 | 0.74 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 4/7/2020 | 0.82 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 4/9/2020 | 0.89 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 4/10/2020 | 0.36 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/28/2020 | 1.49 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/23/2021 | 0.37 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/25/2021 | 0.17 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/28/2021 | 0.49 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 1/29/2021 | 0.34 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/3/2021 | 0.48 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/10/2021 | 0.6 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/11/2021 | 0.21 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/15/2021 | 0.18 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 10/23/2021 | 0.14 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 10/25/2021 | 0.13 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/14/2021 | 0.88 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/23/2021 | 1.32 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/24/2021 | 0.41 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/25/2021 | 0.29 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/29/2021 | 0.6 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 12/30/2021 | 2.07 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/19/2022 | 0.14 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 3/28/2022 | 0.72 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 4/22/2022 | 0.15 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 6/22/2022 | 0.11 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 9/9/2022 | 0.2 |
| USW00023129 | LONG BEACH DAUGHERTY AIRPORT, CA US | 11/8/2022 | 0.86 |