JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>    Plaintiff,<br><br>  v.<br><br>HYDROFORM USA, INCORPORATED, a California corporation,<br><br>    Defendants. | Case No.:  2:23-cv-05389-AB-PVC<br><br>**[PROPOSED] ORDER DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE AND RETAINING JURISDICTION OVER SETTLEMENT AGREEMENT**<br><br>**FRCP 41(a)(2)**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.)** |

  Good cause appearing, and the Parties having stipulated and agreed, the Court ORDERS: Plaintiff LOS ANGELES WATERKEEPER'S claims against Defendant HYDROFORM USA, INC., as set forth in the Complaint and Notice filed in this action, are hereby **dismissed in their entirety with prejudice**, and the Court shall retain jurisdiction over this matter for purposes dispute resolution and enforcement of the Settlement Agreement, attached hereto as Exhibit A and fully incorporated by reference herein. Each Party shall bear its own attorneys' and expert fees and costs except as provided for in the Settlement Agreement.

DATED: September 27, 2023

              _____
              Honorable Andre Birotte Jr.

# EXHIBIT A

## SETTLEMENT AGREEMENT

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Hydroform USA Incorporated ("Hydroform" or "Defendant") owns and operates a facility serving the aerospace industry at 2848 E. 208th Street, Carson, California 90810 ("Facility") which is categorized under Standard Industrial Classification ("SIC") Codes 3728 (aircraft parts and auxiliary equipment, NEC), 3355 (aluminum rolling and drawing), 3471 (electroplating, plating, polishing, anodizing, and coloring), and 3398 (metal heat treating).

**WHEREAS,** stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ and 2015-0122-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Plaintiff alleges Defendant's operations at the Facility result in discharges of pollutants into waters of the United States that are regulated by Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional

3

pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on December 8, 2022, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ and Order 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load ("TMDL") Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on July 6, 2023, LA Waterkeeper filed a complaint against Defendant in the Central District of California, Civil Case No. 2:23-cv-05389-AB-PVC ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Dominguez Channel Estuary and the Los Angeles Harbor ("Receiving Waters");

**WHEREAS**, Defendant denies all allegations in the 60-Day Notice Letter and Complaint relating to the Facility and makes no admissions of any facts, allegations, legal conclusions, liabilities, damages, or claims.

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties," and individually a "Party") agree that it is in their mutual interest to enter into a Settlement Agreement ("Agreement") setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Agreement shall be made in compliance with all applicable federal, state, and local rules and regulations.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties agree for purposes related to this Agreement as follows:

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. LA Waterkeeper has standing to bring this action;

5. The Court shall retain jurisdiction over this action and the Settling Parties for purposes of interpreting, modifying, and/or enforcing the terms of this Agreement.

## I. SETTLEMENT AGREEMENT OBJECTIVES

6. It is the express purpose of the Setting Parties through this Agreement to further the objectives of the CWA, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Agreement, compliance with all terms and

1   conditions of the General Permit, and compliance with all applicable sections of the
2   CWA.

3       7.      In light of these objectives and as set forth fully below, the Settling
4   Parties agree to comply with the provisions of this Agreement, and Defendant agrees
5   to comply with the applicable terms and conditions of the General Permit, and all
6   applicable sections of the CWA at the Facility.

7   **II. AGENCY REVIEW AND SETTLEMENT AGREEMENT TERM**

8           **A. AGENCY REVIEW OF SETTLEMENT AGREEMENT**

9       8.      Agency Review. Plaintiff shall submit this Agreement to the United
10  States Department of Justice and the EPA (the "Federal Agencies"), within three (3)
11  business days of the Effective Date (defined at Paragraph 11) for agency review
12  consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45)
13  calendar days after receipt by the Federal Agencies ("Agency Review Date").
14  Receipt will be evidenced by an email from the Federal Agencies, a copy of which
15  shall be provided to Defendant. In the event that the Federal Agencies object to this
16  Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s)
17  raised by the Federal Agencies.

18      9.      Court Notice. Within three business days (3) of the Effective Date of this
19  Agreement, Plaintiff shall notify the Court of the receipt date by the Federal
20  Agencies, as required by 40 C.F.R. § 135.5.

21      10.     Case Dismissal. Within ten (10) court days of the Agency Review Date,
22  provided no objrection, LA Waterkeeper shall file a Stipulation to Dismiss with
23  Prejudice and [Proposed] Order ("Stipulation and Order") pursuant to Federal Rule
24  of Civil Procedure 41(a)(2) with the District Court this Agreement attached and
25  incorporated by reference, specifying that LA Waterkeeper is dismissing with
26  prejudice all claims in its Complaint. The Stipulation and Order shall state the
27  District Court will maintain jurisdiction over the Settling Parties for the sole
28  purpose of resolving disputes regarding the Settling Parties' compliance with this
    Agreement through the later of:

(i) the Termination Date; (ii) the conclusion of any proceeding to enforce this Agreement initiated prior to the Termination Date (defined at Paragraph 12); or (iii) the completion of any payment or affirmative duty required by this Agreement. The date the District Court signs the Order shall be the "Dismissal Date."

11.  Effective Date. The Effective Date of the Agreement shall be the date of execution as evidenced by the last signature of the Settling Parties.

12.  Termination Date. Except as otherwise set forth herein, this Agreement shall terminate the latest of: (i) July 1, 2026; (ii) seven (7) calendar days from the conclusion of any proceeding or process to enforce this Agreement initiated prior to July 1, 2026; or (iii) seven (7) calendar days from Defendant's completion of all payments required by this Agreement ("Termination Date").

13.  Early Termination Date. Provided that Defendant satisfies the early termination sampling requirements described in Paragraph 25, this Agreement shall terminate the latest of: (i) July 1, 2025; (ii) seven (7) calendar days from the conclusion of any proceeding or process to enforce this Agreement initiated prior to July 1, 2025; or (iii) seven (7) calendar days from Defendant's completion of all payments required by this Agreement ("Early Termination Date").

**B.  DEFINITIONS**

14.  Unless otherwise expressly defined herein, terms used in this Agreement which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Agreement, the following definitions apply:

a.  "BAT" means the Best Available Technology Economically Achievable.

b.  "BCT" means the Best Conventional Pollutant Control Technology.

c.  "BMPs" means Best Management Practices.

d.  "Agreement" means this Settlement Agreement and any attachments or documents incorporated by reference.

e. "Day" means a calendar day. In computing any period of time under this Agreement, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f. "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

g. "MIP" means a Monitoring Implementation Plan.

h. "PPT" means Pollution Prevention Team.

i. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

j. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

k. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

l. "SWPPP" means a Storm Water Pollution Prevention Plan.

m. "SWRCB" means the State Water Resources Control Board.

n. "Term" means the period between the Effective Date and the "Termination Date," or the "Early Termination Date," as applicable.

o. "Wet Season" means the seven-month period beginning October 1st of any given calendar year and ending April 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

15. <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Agreement.

16. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1)

develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Agreement and the Storm Water Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Agreement.

17. <u>Rain Gauge/Sensor</u>. Defendant shall install an electronic rain gauge or sensor at the Facility on or before the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times for all rain events. During the Term of this Agreement, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Agreement. In the event Defendant's rain gauge/sensor malfunctions, the Los Angeles County Department of Public Works Rain Gauge 1113 (Dominguez Water Company, 33.831667, -118.225278) will be used to establish precipitation quantities and timing for the purposes of this Agreement.

18. <u>Structural and Non-Structural BMPs for the Facility</u>: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

a. Defendant will install multiple layers of filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials at DP-1, DP-2, and DP-3 prior to forecasted storm events with a greater than 50% probability of precipitation above 0.1 inches. Defendant shall rely on the National Oceanic and

Atmospheric Administration's ("NOAA") National Weather Service for Carson, CA to determine whether a forecasted storm event has a greater than 50% probability of precipitation above 0.1 inches.

b.  To the maximum extent practicable, Defendant will cover industrial materials stored outdoors by tarps or move industrial materials stored outdoors into a covered structure prior to forecasted rain events with a greater than 50% probability of precipitation above 0.1 inches.

c.  Defendant will conduct comprehensive manual sweeping for outdoor and indoor storage, processing, and loading/unloading areas at the outset of the Wet Season and then monthly during the Wet Season. Defendant will conduct sweeping for the remainder of the Reporting Year on an as-needed basis when accumulated sediment or debris is observed during daily observations.

### B.  SAMPLING AT THE FACILITY

19.  Defendant shall develop a monitoring program consistent with the General Permit. During the Term of this Agreement, Defendant shall collect samples of storm water discharge from each Discharge Point. Defendant shall collect storm water samples from each Discharge Point from at least four (4) Qualifying Storm Events, including, at minimum, the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first (2) two Qualifying Storm Events during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by General Permit § XI.B.5. Any failure to collect samples as required by this Agreement, including as a result of insufficient discharge, shall be documented, including by taking representative photographs, and submitted to LA Waterkeeper by email, along with rain gauge/sensor data for the data when the sample should have been collected but was not, within ten (10) days of a written request for such records by LA Waterkeeper.

20.  <u>Sampling Parameters</u>: QSE samples collected pursuant to this Agreement shall be analyzed, at minimum, for the parameters listed in Table 1. Should

1   Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R.

2   § 131.38 and/or in the General Permit for any reason, including as a result of changed

3   operations or a revised pollutant source assessment, such parameter shall be treated as

4   if listed in Table 1 for the purposes of this Agreement, including the Action Plan

5   requirements below, and the Parties shall meet and confer regarding the applicable

6   Table 1 limit for such purposes.

7        21.  <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall

8   deliver all samples to a California state certified environmental laboratory for

9   analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH

10  will be completed onsite using a calibrated portable instrument for pH in accordance

11  with the manufacturer's instructions.

12       22.  <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical

13  methods adequate to detect the individual contaminants at or below the values

14  specified in the General Permit and Table 1 below.

15       23.  <u>Reporting</u>: Defendant shall provide complete laboratory results of all

16  samples collected at the Facility to SMARTS in accordance with the General Permit.

17  Defendant shall provide copies of laboratory reports containing data required to be

18  provided to SMARTS in accordance with the General Permit to LA Waterkeeper

19  within five (5) business days of receiving the laboratory report.

20       **C.  REDUCTION OF POLLUTANTS IN DISCHARGES**

21       24.  Table 1 Numeric Limits: Defendant shall develop and implement BMPs to

22  reduce pollutants in storm water at the Facility to levels below those in Table 1.

23

24

25

26

27

28

[PROPOSED] SETTLEMENT AGREEMENT

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L 100 mg/L | Instantaneous NAL Annual NAL |
| Oil & Grease (O&G) | 25 mg/L 15 mg/L | Instantaneous NAL Annual NAL |
| Zinc | 0.26 mg/L | Annual NAL |
| Nitrate + Nitrite Nitrogen (N+N) | 0.68 mg/L | Annual NAL |
| Copper | 0.0332 mg/L | Annual NAL |
| Iron | 1 mg/L | Annual NAL |
| Aluminum | 0.75 mg/L | Annual NAL |
| pH | 6-9 s.u. | Instantaneous NAL |

25.  <u>Table 1 Exceedances</u>. Under this Agreement, an "Exceedance" of Table 1 is defined as follows: an exceedance ("Exceedance") occurs when two (2) or more analytical results from samples taken for any single parameter within a Reporting Year exceeds the applicable Table 1 Standard[1], or if one (1) analytical result from samples taken for any single parameter within a Reporting Year exceeds the applicable Table 1 Instantaneous NAL Standard. An Exceedance shall be a violation of this Agreement. If there are no Exceedances in the 2023-2024 and 2024-2025 Reporting Years, this Agreement shall terminate early on July 1, 2025, consistent with Paragraph 13 of this Agreement.

26.  <u>Action Plan for Table 1 Exceedances</u>: As of the Effective Date, and for the remainder of the Term of the Agreement, if Defendant discharges non-stormwater from a Discharge Point in violation of Paragraph 15, or storm water samples demonstrate an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The Action Plan shall be submitted to LA

---

[1] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 0.26 mg/L standard for zinc on December 28, 2023; (ii) samples from Sample Point 1 exceeding the  0.26 mg/L standard for zinc on December 28, 2023 and on March 15, 2024; or (iii) samples from Sample Point 1 exceeding the  0.26 mg/L standard for zinc on December 28, 2023, and samples from Sample Point 2 exceeding the  0.26 mg/L standard for zinc on March 15, 2024.

Waterkeeper within thirty (30) days of the non-stormwater discharge or the receipt of the laboratory report demonstrating the Exceedance, as applicable.

    a. <u>Action Plan Requirements</u>. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Defendant shall notify LA Waterkeeper in writing when an Action Plan has been implemented.

    b. <u>Action Plan Proposed BMPs</u>: The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

        i. <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

        ii. <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

        iii. <u>Treatment Systems</u>: Installing additional treatment measures and/or an advanced storm water treatment system to provide

more effective filtration treatment of storm water prior to discharge.

iv. <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c. <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Agreement are an obligation of this Agreement. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Agreement, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 31.b.i. below.

e. <u>Action Plan Payments</u>:  As soon as is reasonably possible after Defendant becomes required to submit an Action Plan pursuant to Paragraph 26, LA Waterkeeper shall send an invoice for Three Thousand Dollars ($3,000.00) and LA Waterkeeper's Taxpayer Identification Number ("TIN") to Defendant at "invoice@hydroformusa.com." Defendant shall pay the invoice within thirty (30) days of receipt of such invoice and TIN. Payments for Action Plans shall not exceed $12,000 in

a Reporting Year, notwithstanding whether more than four (4) Action Plans are submitted in a given Reporting Year. Payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this paragraph will constitute a breach of the Agreement.

### D. VISUAL OBSERVATIONS

27. <u>Storm Water Discharge Observations</u>: During the Term of the Agreement, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof, to ensure adequate implementation and effectiveness.

28. <u>Monthly Visual Observations</u>: During the Term of the Agreement, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof, to ensure adequate BMP implementation and effectiveness.

29. <u>Visual Observations Records</u>: Defendant shall maintain observation records, including representative photographs, to document compliance with Paragraphs 27 and 28 and shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

30. <u>Employee Training Program</u>: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Agreement ("Designated Employees"), and (2) that these Designated

Employees are properly trained to perform the activities required by the General Permit and this Agreement ("Training Program"):

    a. Language. The training and training materials shall be available and offered in the language(s) in which Designated Employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Agreement and the General Permit;

    b. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Agreement and the General Permit, and shall be repeated as necessary to ensure that all Designated Employees are familiar with the requirements of this Agreement, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

    c. Sampling Training: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Agreement, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

    d. Visual Observation Training: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

    e. Non-Storm Water Discharge Training: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

f.  <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

g.  Defendant shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request;

h.  <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within thirty (30) days of the Effective Date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

31.  <u>SWPPP Revisions</u>:

a.  <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Agreement and comply with the General Permit and submit the updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date. The updated SWPPP shall contain, at a minimum, the following elements:

i.  A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.  A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

   iii. Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Agreement;

   iv. A set of site maps that comply with section X.E of the General Permit and provisions of this Agreement;

   v. A MIP as required by sections XI and X.I of the General Permit; and

   vi. A Training Program as described above at paragraph 30.

   vii. Upon the Effective Date as defined in Paragraph 11, Defendant shall be deemed to have completed the initial SWPPP revisions required by Paragraph 31.a.i–vi of this Agreement.

  b. Additional SWPPP Revisions:

   i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit it to LA Waterkeeper.

   ii. Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit it to LA Waterkeeper.

c. <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to Paragraphs 30(a) and 30(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following incorporation of any proposed modification or additions into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

### E.  COMPLIANCE MONITORING AND REPORTING

32.  Every year during the Term of this Agreement, LA Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Agreement and the General Permit. In the event of a dispute regarding Defendant's compliance with this Agreement, and provided a Site Inspection would be relevant to resolving the Settling Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection per year. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with as much notice as possible—but at least forty-eight (48) hours' notice prior to a Site Inspection in anticipation of wet weather, and two (5) days' notice during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the

[PROPOSED] SETTLEMENT AGREEMENT

purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 61. During a wet weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

33. <u>Document Provision</u>. During the Term of this Agreement, Defendant shall notify and submit documents to LA Waterkeeper as follows:

    a.    Defendant shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

    b.    Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to LA Waterkeeper within three (3) business days of receipt by Defendant. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

34. <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Agreement during the Term of this Agreement by paying Four Thousand Dollars ($4,000.00) per each Reporting Year that the Agreement is in effect.  Upon the

Effective Date of the Agreement, LA Waterkeeper shall send an invoice for Four Thousand Dollars ($4,000.00) and LA Waterkeeper's TIN to Defendant as soon as is reasonably possible to "invoice@hydroformusa.com." Thirty (30) days prior to each anniversary of the Effective Date during the Term, LA Waterkeeper shall send an invoice for Four Thousand Dollars ($4,000.00) and LA Waterkeeper's TIN to Defendant as soon as is reasonably possible to "invoice@hydroformusa.com." Defendant shall pay each invoice within thirty (30) days of receipt of such invoice and TIN. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this paragraph will constitute breach of the Agreement.

### F. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

35. <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Southern California Bight, Defendant agrees to make a payment totaling Twenty Two Thousand Five Hundred Dollars ($22,500.00) to the to the Los Angeles Neighborhood Land Trust for the Wishing Tree Park Project within thirty (30) days of the Effective date, payable to the Los Angeles Neighborhood Land Trust and sent via overnight mail to Los Angeles Neighborhood Land Trust, 1689 Beverly Blvd., Los Angeles, CA 90026, Attn: Tori Kjer.

36. <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Sixty Eight Thousand Five Hundred Dollars ($68,500.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. Upon the Effective

Date of the Agreement, Aqua Terra Aeris Law Group shall send an invoice for Sixty Eight Thousand Five Hundred Dollars ($68,500.00) and Aqua Terra Aeris Law Group's TIN as soon as is reasonably possible to Defendant at "invoice@hydroformusa.com." Defendant shall pay the invoice within thirty (30) days of receipt of such invoice and TIN. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

37.     In the event that Defendant fails to submit to LA Waterkeeper any payment or document, report or other communication required by this Agreement, LA Waterkeeper shall notify Defendant of such failure and provide Defendant with five (5) business days to cure the noted failure (the "Cure Period"). If the noted failure is not cured within the Cure Period, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to the Los Angeles Neighborhood Land Trust for the Wishing Tree Park Project, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 35. Payment shall be via overnight mail to Los Angeles Neighborhood Land Trust, 1689 Beverly Blvd., Los Angeles, CA 90026, Attn: Tori Kjer. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

38.  Interest on Late Payments: Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Agreement that are not received by the end of the Cure Period. The interest shall accrue starting the next business day after the Cure Period and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Agreement. Interest on late payments shall be paid by check payable to the Los Angeles Neighborhood Land Trust for the Wishing

[PROPOSED] SETTLEMENT AGREEMENT

Tree Park Project, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 35. Payment shall be via overnight mail to Los Angeles Neighborhood Land Trust, 1689 Beverly Blvd., Los Angeles, CA 90026, Attn: Tori Kjer.

**IV. DISPUTE RESOLUTION**

39.  This Court shall retain jurisdiction over this matter for the Term of this Agreement for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Agreement. The Court shall have the power to enforce this Agreement with all available legal and equitable remedies, including contempt.

40.  <u>Meet and Confer</u>. Either party to this Agreement may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

41.  <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 40, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

42.  In resolving any dispute arising from this Agreement before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

43.  <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Agreement, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Agreement.

44.  <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Agreement, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Agreement.

45.  Nothing in this Agreement limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date.

46.  Waiver of California Civil Code § 1542. Upon the Effective Date, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542. The parties acknowledge they are familiar with section 1542 of the California Civil Code, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." While a Party may assert that California Civil Code section 1542 applies to general releases only, and that releases herein are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter, and/or Complaint, up to and including the Termination Date of this Agreement.

## VI. MISCELLANEOUS PROVISIONS

47. <u>No Admission of Liability</u>. The Parties enter into this Agreement for the purpose of avoiding prolonged and costly litigation. Neither the Agreement nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

48. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Agreement.

49. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Agreement. A Party's signature to this Agreement transmitted by facsimile or electronic mail shall be deemed binding.

50. <u>Construction</u>. The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Agreement are for reference only and shall not affect the construction of this Agreement.

51. <u>Full Settlement</u>. This Agreement constitutes a full and final settlement of this matter.

52. <u>Integration Clause</u>. This is an integrated Agreement. This Agreement is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Agreement.

53. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54. <u>Choice of Law</u>. The laws of the United States shall govern this Agreement.

55. <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

56. <u>Effect of Settlement Agreement</u>: Compliance with this Agreement does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

57. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Agreement, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

58. <u>Modification of the Settlement Agreement</u>. This Agreement, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Agreement, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

59. Assignment. Subject only to the express restrictions contained in this Agreement, all of the rights, duties and obligations contained in this Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

60. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Agreement when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

61. Correspondence. All notices required herein or any other correspondence pertaining to this Agreement shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
amb@atalawgroup.com

With copies to:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
360 E 2nd St Suite 250
Los Angeles, CA 90012
barak@lawaterkeeper.org
ben@lawaterkeeper.org
Phone: (310) 394-6162

If to Defendant:
Emily L. Murray
Allen Matkins Leck Gamble Mallory
& Natsis LLP
865 S. Figueroa St Ste 2800
Los Angeles, CA 90017
emurray@allenmatkins.com

With copies to:
Kerry Jablonski
Hydroform USA Inc.
2848 E 208th St
Carson, CA 90810
kerryj@hydroformusa.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

62.  If for any reason the DOJ or the District Court should object to this Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Agreement within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Agreement in a mutually acceptable manner that is also acceptable to the District Court, this Agreement shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Agreement and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____August 10_____, 2023          By: _____
                                               Bruce Reznik
                                               Executive Director
                                               Los Angeles Waterkeeper


Dated: _____August 10_____, 2023          By: _____
                                               Kerry Jablonski
                                               President
                                               Hydroform USA Incorporated


APPROVED AS TO FORM

                                          AQUA TERRA AERIS LAW GROUP


Dated: _____August 10_____, 2023          By: _____
                                               Anthony M. Barnes
                                               Attorney for Plaintiff
                                               Los Angeles Waterkeeper


                                          ALLEN MATKINS LECK GAMBLE
                                               MALLORY & NATSIS LLP


Dated: _____August 10_____, 2023          By: _____
                                               Emily L. Murray
                                               Attorney for Defendant
                                               Hydroform USA Incorporated

[PROPOSED] SETTLEMENT AGREEMENT

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Agreement by the Court, this Agreement shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _____September 27, 2023_____          CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE ANDRÉ BIROTTE JR.
United States District Court Judge